## Abraham S. Davis *v.* Samuel Cosel, Appellant.

*Sale—Rescission—Replevin—Fraud.*

A sale may be rescinded and the property retaken by replevin when the vendee was insolvent at the time of purchase, knew himself to be insolvent and intended to cheat and defraud the plaintiff out of his goods, and where the circumstances surrounding the transaction are such as tend to show trick, artifice and false representation.

*Practice, Superior Court—Review—Proper submission under proper instructions.*

Where a careful review of the testimony fully warrants the verdict rendered after a submission of the whole question in a charge which correctly disposed of the legal questions raised by the points, the appellate court will not reverse.

Argued March 12, 1897. Appeal, No. 28, March T., 1897, by defendant, from judgment of C. P., Blair Co., Jan. T., 1896, No. 42, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Replevin. Before BARKER, P. J., of the 47th judicial district specially presiding.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $156 with interest from October 25, 1895, and $50.00 additional as damages. Defendant appealed.

*Errors assigned* among others were (2) In affirming plaintiff's sixth point which point and answer are as follows: "6. If the jury find from the evidence that after the goods were delivered to the defendant, the plaintiff called upon him and demanded the goods or pay for them, and the defendant agreed to return the goods and in the plaintiff's presence put the goods in a box and nailed it, shut and with a chalk or pencil wrote the plaintiff's name on the top of the box, with his New York address, and then told the plaintiff to take the goods away, and the plaintiff accepted the goods and called a drayman to take them away, there was in law a redelivery of the goods to the plaintiff; and the refusal of the defendant afterwards to allow the plaintiff to

take the goods away was an unlawful and fraudulent retention of the goods; and the plaintiff is entitled to recover. *Answer:* This point is affirmed, excepting that, of course, the last clause of it, in regard to the plaintiff being entitled to recover is subject to our other instructions." (4) To a portion of the judge's charge, as follows: "The plaintiff says—and you may have just heard us say—that where goods are obtained fraudulently, with the intent to cheat the vendor out of the goods or the proceeds of the goods, they cannot and ought not to be retained. Outside of any other question in the case, the plaintiff maintains that there was a fraudulent intent on the part of this defendant not to pay for these goods, to cheat and deprive the plaintiff of them; and if you believe that from the facts in the case, then you would be warranted in finding a verdict for the plaintiff." (6) To a portion of the judge's charge, as follows:. "The defendant's counsel asks us here, in a proposition of law submitted to the court, to say to you that there are no facts in this case, in addition to the allegation of insolvency (which is denied by them) to go to the jury to show intended fraud. We listened with more than usual care to the arguments of the counsel on both sides, in order that we might determine in our mind whether there were other facts, in connection with alleged insolvency, to warrant us in submitting this case to you under the laws of Pennsylvania, which, taken with the fact of insolvency and knowledge of insolvency, in case you find its existence, would warrant us in submitting the case to you, and we have concluded, after careful consideration, that there are such facts in the case as to warrant their submission at our hands; and we submit the question to you." (7) To a portion of the judge's charge, as follows: "All the facts surrounding this transaction have been fully argued on both sides; and you must take them into consideration. Although we direct your minds particularly to the occurrences of the 28th of October, yet you must consider all the transactions from the time the order was given down to that day, in determining whether there was a fraudulent intent to cheat and defraud the plaintiff out of these goods or the price of them. I do not know, in reference to this feature of the case, of anything further that I can say to you that will aid you in arriving at a satisfactory conclusion on this branch of the case. I simply say to you that this is the law of the case,

applicable to the transaction. In case you believe that the de-
fendant repurchased, reacquired title to these goods on the 28th
of October, if you are satisfied from the testimony in this case
that he did that, at that time being insolvent and knowing that
he was insolvent, and intending to cheat and defraud the plain-
tiff out of his goods, then you would be warranted in finding a
verdict for the plaintiff in this case; otherwise, you would find
a verdict for the defendant. And what we mean when we say
this is, that if there are such circumstances connected with the
transaction as tend to show any trick or artifice or false repre-
sentation in the transaction by which he acquired the goods, if
there was anything to show that, taken in connection with the
evidence of insolvency, that would be sufficient to warrant you
in saying that this was a fraudulent transaction, and, therefore,
finding for the plaintiff."

*Stevens, Owens & Pascoe*, for appellant.—Even if defendant
was insolvent at the time of sale and knew it, the concealment
of this knowledge by mere silence, without active misrepresen-
tations, was not such a fraud as would avoid the sale: Shirk v.
Konigmacher, 3 Pa. Superior Ct. 45; Rodman v. Thalheimer,
75 Pa. 232; Wessells v. Weiss Bros., 156 Pa. 591; Cooperage
Co. v. Gaul, 170 Pa. 545.

*Hicks & Templeton*, for appellee.—We submit that the learned
court's careful instruction as to the insolvency of the defend-
ant, is the law in Pennsylvania. Smith v. Smith, 21 Pa. 367,
and a long line of cases followed which are too well known to
this court to require citation.

OPINION BY ORLADY, J., April 19, 1897:

In June, 1895 the plaintiff, a New York manufacturer, re-
ceived from the defendant, a clothing merchant, an order for
"seventy two pairs of men pants" of the value of one hundred
and fifty-six dollars to be delivered at Tyrone, Penna. in Sep-
tember following.

The goods were shipped from New York October 16, and
received by the defendant at Tyrone three days later.

After a request by the defendant for further time in which
to make payment, the plaintiff went to Tyrone, and under the

undisputed testimony, on October 28 the contract was rescinded, the goods were boxed up, and the business address of the plaintiff placed thereon by the defendant, who informed him that he would have them delivered at the freight station of the railroad company.

Subsequent to this, the defendant claimed that a new contract was made, by which he was to retain the goods and pay for them. The plaintiff denied positively that any such contract was made or talked about, but testified that when he returned to the store with a drayman for the goods, the defendant refused to deliver them; threatened him with physical violence, and placed the clothing again on the shelves.

The plaintiff caused a writ of replevin to be issued, and when served, the defendant gave bond and retained the property.

A verdict for $214.21 was rendered in plaintiff's favor.

While the original contract was executed in the state of New York, the rescission of it in Pennsylvania left the parties free to contract here, and the whole question in this case was one of fact, viz: Was a new contract made at Tyrone on October 28, by which the same goods were again sold to the defendant by the plaintiff?

As it was stated by the learned trial judge to the jury, "Here is a square, plain and simple issue of fact for you to determine. Did the plaintiff consent that the defendant should retain the goods on the terms testified to by the defendant?"

The contention of plaintiff was, that the proceeding of the defendant was a scheme and trick to get possession of the goods; that he was practically insolvent at the time, and while the means employed were circuitous and novel the object of the original order was to get the goods in his store, and eventually secure them through the means practiced. The defendant urged that the purchase by him October 28, was in good faith, and describes the transaction—after the original contract had been rescinded, the goods boxed up and marked with the owner's name, and ready for delivery to the railroad for reshipment to New York, as follows; "When I came in the store I seen Davis and his drayman he had called, and as I came in his drayman left the store; I says, 'What's this?' He says 'I want to save you the money to have the goods hauled over;' then I says, 'Davis, what do you take me for?' I says, 'You are doing

a very wrong thing to me; I have treated you like a gentleman; why didn't you leave your goods alone? I went out on purpose to get a drayman; if I didn't want to give you these goods back I could keep them;" and after further conversation on the propriety of plaintiff's conduct, the defendant continued; "he talked to me and apologized over and over; I says, 'That's all right, but you can't wipe out what you have done;' I says, 'I offered you to take the goods back;' he says, 'Keep the goods,' he says, 'Will you give me a note?' I says, 'You can take your goods;' then he got to talking around; he says, 'Who will you get to indorse the note?' I says, 'I won't get anybody; if you wish to take my note, you can do so or take the goods;' he says, 'No, I don't want the goods; when will you pay me?' I says, 'I will pay you this bill for the amount of the goods maybe today and maybe tomorrow, anyhow not later than the 14th of November.' Then he again took my hand and shook it and says, 'Well, Cosel, good bye;' he says, 'When will I get that check?' I says, 'Perhaps I will send you that check in a day or two;' my actual intention was to send that check, as I pay all my bills."

On the evening of that day the writ of replevin was served.

The learned trial judge refused a new trial; saying in the opinion filed: "The case was carefully tried, the usual amount of spirit and energy was displayed between the counsel, as well as the parties. The jury saw the parties, heard their testimony, and in a case where our views are as fully in accord with theirs, as expressed in their verdict, we could not conscientiously impose upon the parties the burden of another trial."

A careful review of the testimony fully warranted the verdict returned by the jury, and the court below submitted the whole question to them in a charge which correctly disposed of the legal questions raised by the points.

The assignments of error are overruled and the judgment is affirmed.